UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>LANIKA MERCEDES FRANKLIN,<br>Defendant. | Criminal No. 06-227-10 |

### DETENTION MEMORANDUM

The Defendant, Lanika Mercedes Franklin, has been charged by indictment with Conspiracy to Distribute and Possess with Intent to Distribute One Kilogram or More of Phencyclidine ("PCP") in violation of 21 U.S.C. § 846. The Government requested a detention hearing, which was held on November 15, 2006. At the conclusion of the detention hearing, the Court found that the Defendant should be held without bond. This memorandum is submitted to comply with the statutory obligation that "the judicial officer shall include written findings of fact and a written statement of the reasons for the detention." 18 U.S.C. § 3142(i)(1).

### Findings of Fact

At the detention hearing, the Government proffered that the Defendant was involved in a conspiracy to import and distribute gallons of PCP to the Washington, DC area. According to the Government, the FBI gathered information about the conspiracy through wiretaps, physical

surveillance, informants, and cooperation other law enforcement agencies. Darnell Anthony Jackson and Troy Antoine Hopkins, as leaders of the conspiracy, purchased gallons of PCP in California from Mr. Tony Fitzgerald Hilt, also known as "T." Mr. Jackson and Mr. Hopkins imported the PCP from California to Washington, DC by enlisting female couriers to transport PCP on commercial flights from Long Beach, California to Dulles International Airport. Among these couriers were Ms. Tinesha Denise Adams and Defendant Franklin. The conspirators would hide the PCP in various shampoo, lotion, or mouthwash bottles placed within the couriers' checked luggage. Each courier would transport approximately a gallon of PCP per flight.

The flight records indicate that the conspirators flew regularly between the DC area and Long Beach from September 2005 through at least July 2006. Once the PCP was in the Washington, DC area, the conspirators would dilute the PCP and sell it to wholesalers and distributors. The conspirators would meet to sell the PCP and exchange money at various locations in Washington, DC and suburban Maryland.

As stated above, the Defendant was involved in the conspiracy as part of a repertoire of couriers employed by the leaders of the conspiracy. She was supervised by Ms. Adams, another regular courier.[1] According to the Government, Defendant made repeated flights back and forth between Long Beach and the DC area.[2] While each gallon of PCP had a resale value of over $30,000, Defendant was paid less than $1000 for each trip that she made.

In late May 2006, upon arriving on a flight from Long Beach, Defendant Franklin and Ms.

---

[1] Ms. Adams has also been indicted for her role in this conspiracy but is currently a fugitive.

[2] Government proffered three specific dates on which she traveled between Long Beach and the DC area: October 30, 2005, May 10, 2006, and May 23, 2006.

Adams were confronted by police at Dulles International Airport. After obtaining the couriers' consent, the authorities searched their suitcases and found two gallons of PCP. Although the PCP was seized, Defendant Franklin and Ms. Adams were allowed to leave.

During May 2006, a wiretap had been placed on Mr. Jackson's cellular phone. Through the wiretap, authorities recorded Mr. Jackson discussing various specifics of the conspiracy. Immediately following the seizure of the PCP at Dulles airport, Jackson was recorded discussing the incident with other conspirators. During these discussions, Jackson discussed getting the couriers (*i.e.*, the Defendant and Ms. Adams) home to California through an alternate route.

## Discussion

The Bail Reform Act of 1984, 18 U.S.C. § 3141 *et seq.* (hereinafter "the Act"), provides, in pertinent part, that if a judicial officer finds by clear and convincing evidence that "no condition or combination of conditions will reasonably assure . . . the safety of any other person and the community, such judicial officer shall order the detention of the [defendant] before trial." 18 U.S.C. § 3142(e). Thus, danger to the community alone is a sufficient basis upon which to order pretrial detention. *United States v. Salerno*, 481 U.S. 739, 755 (1987); *United States v. Perry*, 788 F.2d 100, 113 (3d Cir. 1986); *United States v. Sazenski*, 806 F.2d 846, 848 (8th Cir. 1986).

Where the government seeks pretrial detention on the ground that no condition or combination of conditions will reasonably assure the appearance of defendant as required, it has the burden of establishing by a preponderance of the evidence that the defendant will flee before trial if released. *United States v. Vortis*, 785 F.2d 327, 328-29 (D.C. Cir. 1986). The judicial officer must determine that "it is more likely than not that no condition or combination of conditions will reasonably assure an accused's appearance." *United States v. Westbrook*, 780 F.2d 1185, 1188-89

(5th Cir. 1986).

When, as here, a grand jury indictment establishes probable cause to believe that a defendant has committed a violation of the Controlled Substance Act for which a maximum penalty of ten years or more is prescribed, a rebuttable presumption arises that no pretrial release condition or combination of conditions may be imposed to assure her future presence in court. 18 U.S.C. § 3142(e); *see also United States v. Mosuro*, 648 F. Supp. 316, 318 (D.D.C. 1986) (holding that a grand jury indictment establishes probable cause sufficient to create a rebuttable presumption under § 3142(e)).

Here, the Government argues for detention on the basis that the Defendant poses a risk of flight. In determining whether there are conditions of release which will reasonably assure the Defendant's future presence in court, the judicial officer shall take into account the available information concerning (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the Defendant; (3) the Defendant's history and characteristics, including the defendant's ties to the community; and (4) the nature and seriousness of the danger to any person or to the community which would be posed by the Defendant's release. *See* 18 U.S.C. § 3142(g).

The first factor, the nature and circumstances of the offense, favors detention. The Defendant is charged with conspiracy to distribute massive amounts of PCP into the Washington, DC area, a serious crime carrying significant jail time if the Defendant is convicted. The possibility of such jail time creates a strong incentive for the Defendant to flee if released before trial, as evidenced by the fugitive status of her fellow drug courier, Ms. Adams.

The second factor, the weight of the evidence, also favors detention. The FBI has amassed

- 4 -

evidence of the existence and workings of this conspiracy through drug seizures, physical surveillance, wiretaps, flight records, financial transactions, informants, and cooperation with other law enforcement agencies. The Government has linked Defendant to this conspiracy in several ways. They have obtained flight records of her regular air travel between Long Beach and the DC area. On at least one flight, she traveled with Ms. Adams, another alleged drug courier in the conspiracy. A gallon of PCP was seized from the Defendant's luggage at Dulles airport upon her arrival with Ms. Adams on a flight from Long Beach. Also, the Government has wiretap evidence of Mr. Jackson discussing the Defendant in connection with the conspiracy. This evidence proffered by the Government points to the existence of the alleged PCP-trafficking conspiracy and the Defendant's role in it as a courier.

      The third factor, the history and characteristics of the Defendant, supports pretrial detention. Defendant has a juvenile record and no family ties to the DC area save for an aunt who lives near Norfolk, VA. This aunt has offered to house and supervise the Defendant during her pre-trial release. However, the Court is not persuaded that the aunt, who works full time and has a family of her own, would be able to adequately supervise the Defendant.

      The fourth factor, the nature and seriousness of the danger to the community should the Defendant be released, does not strongly favor detention. The Defendant was involved as a low-level courier in a PCP drug-trafficking conspiracy. Though PCP is a dangerous and illegal substance that causes violence in the Washington, DC area, the Court is not convinced (nor did the Government argue) that the Defendant would resume her role in the PCP business were she released before trial.

**<u>Conclusion</u>**

  Based upon consideration of all the evidence and the factors set forth in § 3142(g), this Court concludes by a preponderance of the evidence that no condition or combination of conditions can be imposed to reasonably assure the Defendants' appearance at future court proceedings. The presumption in favor of detention established by the statute has not been overcome by the Defendants in this case. Therefore, the government's motion for pretrial detention is granted.

Dated: November  22nd , 2006         /s/_____
                    ALAN KAY
                    UNITED STATES MAGISTRATE JUDGE